UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SONJA C. THUNEY,

    Plaintiff,

    v.

LOCALS 302 AND 612 OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS–EMPLOYERS CONSTRUCTION INDUSTRY RETIREMENT PLAN, *et al.*,

    Defendants.

Case No. C05-1539RSL

ORDER REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for summary judgment (Dkt. #30) filed by plaintiff Sonja C. Thuney. Sonja Thuney seeks an order declaring that a California court's May 20, 2005 order is a qualified domestic relations order ("QDRO") as that term is defined by the Employee Retirement Security Act of 1974 ("ERISA"), thereby entitling Sonja Thuney to certain benefits. Defendant Kathleen Thuney has filed a cross motion for summary judgment (Dkt. #39) for an order declaring that the order is not a QDRO, dismissing plaintiff's claims, directing the plan to resume payments to her,

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 1

1  and awarding her attorney's fees and costs.

2  For the reasons set forth below, the Court denies plaintiff's motion and grants
3  defendant's motion.[1]

## II.  DISCUSSION

**A.   Background Facts.**

Plaintiff is the first wife of Terry Thuney, who died in an automobile accident in October 2002.  Their marriage ended in divorce in September 1990.

Mr. Thuney participated in Locals 302 and 612 of the International Union of Operating Engineers-Employers Construction Industry Retirement Plan (the "Plan").  The divorce decree, issued by the Shasta County Superior Court in California, stated that the retirement plan was a community property asset and "[i]f liquidation is not possible under the plan, [Sonja Thuney] shall receive one-half of all funds received by [Terry Thuney] from and subsequent to the normal age of retirement."  The decree further stated, "The Court reserves jurisdiction over this asset to enforce [Sonja Thuney's] right to receive her one-half interest in [Mr. Thuney's] retirement plan."  Complaint, Ex. B.  Mr. Thuney was a vested participant in the Plan.  However, he died before retirement, so he was not entitled to receive retirement benefits.

Kathleen Thuney was married to Mr. Thuney from 1995 until his death.  As a result of Mr. Thuney's death, Kathleen Thuney, as his surviving spouse, was entitled to receive a 50% Spouse Option preretirement death benefit under the Plan.  In lieu of that benefit, Kathleen Thuney was entitled to and did elect a monthly preretirement death benefit payable for 60 months.  Kathleen Thuney began receiving preretirement death

---

[1] Because the Court finds that this matter can be decided on the parties' memoranda, declarations, and exhibits, the parties' request for oral argument is denied.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 2

1 benefits under the Plan beginning in November 2002.

2     In December 2003, Sonja Thuney notified the Plan that she was filing a motion to
3 obtain a QDRO. Sonja Thuney obtained a purported QDRO *nunc pro tunc* in May 2005
4 from Shasta County Superior Court. Complaint, Ex. G (the "2005 Order"). Kathleen
5 Thuney was not given notice of the California proceedings.

6     Plaintiff subsequently submitted the purported QDRO to the Plan. The Plan
7 determined that the QDRO was not qualified, and notified Sonja Thuney of that
8 determination by letter dated July 8, 2005. Affidavit of Kathleen Thuney, (Dkt. ## 37,
9 41) ("K. Thuney Decl."), Ex. E. The Plan's determination was based primarily on two
10 factors: (1) the divorce decree did not award Sonja Thuney preretirement death benefits
11 or designate her as a surviving spouse, and (2) the surviving spouse's right to pre-
12 retirement death benefits irrevocably vests when the participant dies, and a QDRO
13 entered after the participant's death cannot divest the surviving spouse of her right to
14 those benefits.

15     The Plan provided for benefits for 60 months. However, the Plan suspended
16 payment of benefits when plaintiff commenced this litigation.

17     Plaintiff filed her complaint with this Court on September 8, 2005 seeking the
18 declaratory judgment she seeks in this motion, a judgment against Kathleen Thuney for
19 the sums already paid to her under the Plan, and her attorney's fees and costs. By
20 stipulation of the parties and order of the Court, the Plan was discharged from liability
21 except to pay the remaining benefits due, once the rightful beneficiary is determined.

22 **B.    Applicable Standards.**

23     On a motion for summary judgment, the Court must "view the evidence in the light
24 most favorable to the nonmoving party and determine whether there are any genuine
25 issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All

26 ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 3

1  reasonable inferences supported by the evidence are to be drawn in favor of the
2  nonmoving party.  See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir.
3  2002).  "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving
4  party, summary judgment must be denied."  T.W. Elec. Serv., Inc. v. Pacific Elec.
5  Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

6       In this case, there is no dispute regarding an interpretation of the Plan.  Rather, the
7  dispute is based on whether the 2005 Order qualifies as a QDRO under federal law.
8  Accordingly, the Court reviews the Plan's determination *de novo*.  See, e.g., Samaroo v.
9  Samaroo, 193 F.3d 185, 189 (3rd Cir. 1999) (reviewing plan's QDRO determination *de*
10 *novo* because it was a legal conclusion and a question of statutory construction).

11 **C.  Analysis.**

12      This case arises under ERISA, as amended by the Retirement Equity Act of 1984
13 ("REA").  29 U.S.C. § 1056(d)(3).  ERISA's anti-alienation provision states that "each
14 pension plan shall provide that benefits provided under the plan may not be assigned or
15 alienated."  29 U.S.C. § 1056(d)(1).  The REA amended ERISA's anti-alienation
16 provision to give effect, in some circumstances, to a "QDRO."  A QDRO is a "domestic
17 relations order . . . which creates or recognizes the existence of an alternate payee's[2] right
18 to, or assigns to an alternate payee the right to, receive all or a portion of the benefits
19 payable with respect to a participant under a plan" and which meets certain statutory
20 requirements.  29 U.S.C. § 1056(d)(3)(B)(I).

21      Plaintiff concedes that the 1990 divorce decree does not meet the statutory

---

[2] An "alternate payee" is "any spouse, former spouse, child, or other dependant of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant."  29 U.S.C. § 1056(d)(3)(K).

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 4

requirements for a QDRO. Plaintiff's Motion at p. 18. Accordingly, it is not a QDRO.

Plaintiff contends that the 2005 Order is a QDRO, and that order appears to meet the statutory requirements for a QDRO. Plaintiff argues that nothing in the statute or case law requires a QDRO to be in place prior to the death of a plan participant. Plaintiff is correct on that point. See, e.g., Trustees of the Dirs. Guild of Am.-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 421 (9th Cir. 2000) (explaining that "a QDRO only renders enforceable an already-existing interest" so there is no reason why a QDRO must be obtained prior to the participant's death or retirement). Plaintiff argues that, consistent with Tise, the 2005 Order simply documented "a separate interest in a pension plan that existed before the death of the plan participant." Plaintiff's Motion at pp. 2-3. However, the divorce decree does not grant plaintiff any rights to preretirement death benefits or surviving spouse benefits under the Plan. Instead, it entitled plaintiff to receive "one-half of all funds received by [Mr. Thuney] from and subsequent to the normal age of retirement." Because Mr. Thuney had not retired on the date of his death, he was not entitled to receive, and did not receive, retirements benefits under the Plan. As the Plan noted in its denial letter, the divorce decree is silent regarding preretirement death benefits to a surviving spouse, so that order did not grant plaintiff any right to those benefits. There is also no evidence that Mr. Thuney and plaintiff ever discussed, much less agreed to, payment of preretirement or surviving spouse benefits. These facts alone doom plaintiff's claim. See, e.g., Tise, 234 F.3d at 421 (explaining that a purported beneficiary can submit a QDRO after the triggering event to enforce "an *already-existing interest*") (emphasis added); Hamilton v. Washington State Plumbing & Pipefitting Indus. Pension Plan, 433 F.3d 1091, 1094 (9th Cir. 2006) (holding that a dissolution order purporting to assign rights did not divest a surviving spouse of surviving spouse benefits because the order "made no reference to surviving spouse rights"). As the Ninth Circuit

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 5

1 noted in Hamilton, "the surviving spouse benefit must be explicitly assigned to a former
2 spouse in a QDRO in order to overcome the surviving spouse's right to an annuity under
3 ERISA."  Id.; see also Samaroo, 193 F.3d at 187 n.2 (determining that a divorce decree
4 did not entitle a participant's ex-wife to preretirement surviving spouse benefits because
5 the decree "was silent on the issue of survivor's rights").  These decisions and the lack of
6 an assignment in the divorce decree defeat plaintiff's argument that she had any
7 preexisting right to surviving spouse benefits.

8       Plaintiff argues that she is entitled to benefits based on Tise and Files v.
9 ExxonMobil Pension Plan, 428 F.3d 478 (3rd Cir. 2005).  However, because plaintiff had
10 no legal interest in the surviving spouse benefits prior to Mr. Thuney's death, plaintiff,
11 contrary to her assertion, is not in the same position as the plaintiffs in those cases.  Also,
12 there was no surviving spouse in either of those cases.  Nor did either case involve a
13 beneficiary to whom benefits were already being paid and who the plaintiff attempted to
14 divest of those benefits.  In contrast, in cases where those facts existed, courts have held
15 that plaintiff was not entitled to the benefits.  Samaroo, 193 F.3d at 190; Hopkins v.
16 AT&T Global Info. Solutions, Co., 105 F.3d 153, 156 (4th Cir. 1997) (declining to give
17 QDRO status to a state court order that an ex-wife obtained after the participant retired
18 and began drawing benefits);[3] Files, 428 F.3d at 487 n.12 (explaining that "the key
19 distinction between *Hopkins* and Files's claim is that in *Hopkins*, there was an attempt to
20 divest benefits already vested in a subsequent spouse, whereas here, there was no such

---

22 [3] The holdings in Samaroo and Hopkins were based in part of the fact that if a
participant or beneficiary were permitted to change his or her benefits after the triggering
23 event occurred, it "would wreak actuarial havoc on administration of the Plan."  Samaroo,
193 F.3d at 190 and n.3.  Similarly, in this case, the Plan's Answer demonstrates that its
24 actuarial calculations would be disturbed if it were required to pay benefits to plaintiff.  It
was paying Kathleen Thuney benefits of $5,922.46 per month based on her age, but
25 would pay Sonja Thuney a different, albeit lesser, amount.  Answer at ¶ 41.

26 ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 6

1 vesting").[4]

2       Plaintiff also notes that the statute requires that, during the first eighteen months
3 after benefits become payable, the plan must segregate benefits that are potentially
4 payable to an alternate payee. 29 U.S.C. § 1056(d)(3)(H)(v). Plaintiff alleges that the
5 statutory 18-month period would be meaningless if the proceeds irrevocably vested at the
6 time of the participant's death or retirement. The cases that have addressed that 18-
7 month period, however, have noted that its purpose is to allow a plan administrator to
8 segregate and hold the benefits while claims are analyzed and an individual is attempting
9 to "qualify" his or her QDRO. See, e.g., Tise, 234 F.3d at 422; Files, 428 F.3d at 489-90.
10 None of the cases cited involved a situation where, as here, the plan had no notice of the
11 alternate payee's asserted claim prior to the triggering event, properly began paying
12 benefits pursuant to the available paperwork, then was faced with an attempt to divest the
13 surviving spouse of benefits. Tise, 234 F.3d at 426 n.9 ("We do not decide whether a
14 QDRO could issue after a participant's death if the plan had no notice of a DRO-created
15 interest before the death"). As set forth above, under those circumstances, the courts that
16 have considered that issue have held that the benefits belong to the surviving spouse.

17       Furthermore, requiring the Plan to pay benefits to plaintiff would require it to
18 violate the Plan itself. The Plan provides, "The Plan shall not make a determination that
19 an order is a QDRO if the order requires payment of benefits which were paid prior to the
20 Plan's receipt of the QDRO." K. Thuney Decl., Ex. E at p. 2 (Plan denial letter citing

---

[4] See also Rivers v. Central and S.W. Corp., 186 F.3d 681 (5th Cir. 1999); Stahl v. Exxon Corp., 212 F. Supp. 2d 657 (S.D. Tex. 2002); see also Hamilton, 433 F.3d at 1096 (citing and quoting Daniel N. Janich, *When Remarriage Muddies the Waters*, 24 Family Advocate 39 (2000) ("Unfortunately, failure to include a survivorship provision in the QDRO often goes undetected until the participant dies or retires, that is, when the survivor benefits irrevocably vest in the current spouse and it is too late to do anything about it")).

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 7

Plan Section 14.4).  Plaintiff does not challenge the Plan's determination on that issue.[5]

Finally, plaintiff alleges that because of various obstacles, including Mr. Thuney's concealment of his failure to complete the necessary paperwork, she was unable to submit a QDRO to the Plan within 18 months after benefits became payable.  Plaintiff argues that her failure to do so does not make the QDRO unenforceable.  Because the Court finds that the QDRO is not enforceable for other reasons, it does not consider this additional argument.[6]

Both parties have requested an award of reasonable attorney's fees, costs, and disbursements.  Pursuant to the statute, the Court has discretion to allow an award of reasonable attorney's fee and costs to either party.  29 U.S.C. § 1132(g)(1).  Because defendant is the prevailing party, the Court considers only her request.  See, e.g., Bekos v. Providence Health Plans, 334 F. Supp. 2d 1248, 1258 (D. Or. 2004).  The Court considers the following factors:

> (1) the degree of the opposing parties' culpability or bad faith;
> (2) the ability of the opposing party to satisfy an award of fees;
> (3) whether an award of fees . . . would deter others from acting under similar circumstances;
> (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and
> (5) the relative merits of the parties' positions.

Elliot v. Fortis Benefits Ins. Co., 337 F.3d 1138, 1148 (9th Cir. 2003) (internal citation and quotation omitted).  The Ninth Circuit has stated, "We have frequently expressed our disfavor of awards of attorney's fees against individual ERISA plaintiffs who seek

---

[5] The Court reviews the Plan's interpretation of its own terms under an abuse of discretion standard.  See, e.g., Hamilton, 433 F.3d at 1102.

[6] Plaintiff also seeks to recoup the funds already paid to Kathleen Thuney.  The Court does not address that issue because both parties agree that it should be addressed in the separately pending proceedings in Minnesota state court.

ORDER REGARDING CROSS MOTIONS
FOR SUMMARY JUDGMENT - 8

pension benefits to which they believe they are entitled." Corder v. Howard Johnson & Co., 53 F.3d 225, 231 (9th Cir. 1994) (citing numerous cases). Applying the factors, it is unclear whether plaintiff could satisfy an award of fees. However, as an individual, she is less likely to be able to do so than a corporate entity might be. The large amount of unpaid child support and spousal maintenance owed to plaintiff leads the Court to believe an award of fees would be a financial hardship for plaintiff. Defendant is not requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA. Also, the underlying issue was a close call, there is no evidence that plaintiff is culpable or acted in bad faith, and both parties' positions were substantially supported by relevant authority. Furthermore, an award might deter others from pursuing potentially meritorious claims for benefits. Accordingly, the Court declines to award fees and costs in this case.

### III. CONCLUSION

For all of the foregoing reasons, the Court GRANTS defendant's motion for summary judgment (Dkt. #39) and DENIES plaintiff's motion for summary judgment (Dkt. #30). The Plan shall resume paying benefits to Kathleen Thuney pursuant to the terms of the Plan and consistent with this order. The Clerk of the Court is directed to enter judgment in favor of defendant Kathleen Thuney and against plaintiff.

DATED this 4th day of June, 2007.

/s/ Robert S. Lasnik
Robert S. Lasnik
United States District Judge